UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOMANITE CORPORATION, a California corporationm dba QC CONSTRUCTION PRODUCTS,<br><br>    Plaintiff,<br><br> v.<br><br>NEWLOOK INTERNATIONAL, INC., Utah corporation; and DOES 1 through 10, inclusive,<br><br>    Defendants. | 1:07-CV-01640-OWW-SMS<br><br>MEMORANDUM DECISION RE GRANTING DEFENDANT'S § 1404 MOTION TO TRANSFER AND DENYING DEFENDANT'S § 1406 MOTION TO TRANSFER OR DISMISS (DOC. 5) |

## 1. INTRODUCTION

This matter was brought before the court on Defendant Newlook International, Inc.'s ("Newlook") motion to dismiss or transfer Plaintiff Bomanite Corporation, dba QC Construction Products' ("QC") complaint pursuant to 28 U.S.C. § 1406 and Federal Rules of Civil Procedure 12(b)(3) claiming the United States District Court for the Eastern District of California is an improper venue for this action, as subject matter jurisdiction is absent, or alternatively, to transfer this action pursuant to 28 U.S.C. § 1404 to the United States District Court for the Central District of Utah for the convenience of the parties and witnesses and in the interest of justice.

Plaintiff's complaint alleges causes of action for breach of contract, interference with existing and future business relationships and economic advantage, fraud and deceit.

1

Plaintiff's complaint was removed from the Superior Court for the County of Madera on diversity grounds.  Diversity jurisdiction is invoked under 28 U.S.C. § 1332, based on the parties' citizenship in different states and the amount in controversy in excess of the $75,000 jurisdictional minimum.  Oral argument on this matter was heard on April 7, 2008.

## 2.   PROCEDURAL BACKGROUND

Plaintiff's complaint filed October 23, 2007 in the Superior Court of the County of Madera, was removed by Defendant Newlook on November 13, 2007 to the Eastern District of California on the basis of diversity grounds. (Doc. 1, Notice of Removal and Complaint)  Defendant Newlook moved to dismiss or transfer the Complaint to the United States District Court for the Central District of Utah on November 19, 2007. (Doc. 5, Motion to Transfer)  Plaintiff opposed the Motion to Transfer on December 27, 2007. (Doc. 11, Opposition)  Defendant filed its reply to Plaintiff's Opposition on March 28, 2008. (Doc. 15, Reply)

## 3.   FACTUAL HISTORY

This case involves a contractual dispute over a Newlook Authorized Distributor Agreement entered into between Plaintiff and Defendant on January 23, 2007 (the "Distribution Agreement") under which QC was appointed as a distributor of Newlook products. (Complaint, ¶ 6)  Under the terms of the Distributor Agreement, QC was to serve as the exclusive distributor (other than Newlook itself) in the United States and Canada, marketing and selling Newlook products as Newlook by QC. (Complaint, ¶ 7, and Doc. 5, Motion to Transfer, ¶ 10)  The one exception, contained in section 1.2 of the Distributor Agreement, is that

2

for the first 12 months of the term of the Distributor Agreement, QC would not sell Newlook products to Newlook's existing customers unless QC and Newlook in "good faith" transitions some of the customers to QC during the initial 12 months. (Complaint, ¶ 7) Defendant contends the Distributor Agreement was designed to create a relationship that would give both companies a greater sales advantage and would also generate new accounts and customers for Newlook's products. (Doc. 5, Motion to Transfer, ¶ 11)

**A.    Negotiations to Enter Into the Distributor Agreement**

Defendant contends that in October 2006, Newlook and QC began discussions regarding their potential business relationship whereby QC would serve as a distributor of Newlook's products. The initial conversations took place on the phone and and/or via emails between Chris Sullivan, QC's National Director of Sales, and Jacob Webb, Newlook's Vice President, and Reid Langston, Newlook's President. (Doc. 5, Motion to Transfer, ¶ 3)

Defendant asserts that on or about November 6, 2006, Mr. Sullivan, of QC, and Greg Iannone, QC's Western Regional Sales Manager, traveled to Newlook's headquarters in Salt Lake City, Utah, to meet with Mr. Webb and Mr. Langston of Newlook, to negotiate a potential distribution agreement. (Doc. 5, Motion to Transfer, ¶ 5) Defendant alleges that again on or about November 29, 2006, Mr. Sullivan of QC, and Bill Nichols, QC's Vice President and Chief Operations Officer, traveled to Newlook's headquarters in Salt Lake City, Utah to continue negotiations of an agreement. (Doc. 5, Motion to Transfer, ¶ 6)

**B.    Notice of Breach**

Defendant alleges that on October 11, 2007, as required by section 6.2(c) of the Distributor Agreement, Newlook sent QC a formal notice of QC's breaches and gave QC thirty (30) days to cure or face termination of the Agreement.

Defendant alleges that QC performed well below the agreed upon sales forecast and in violation of the Distributor Agreement, sought to meet its sales forecast by selling directly to Newlook's customers without an agreed upon transition as required by the agreement. (Doc. 5, Motion to Transfer, p. 3:1-19, and Exhibit B, Newlook Notice of Breach letter)  Defendant contends that as required by the Distributor Agreement, both QC and Newlook provided each other with a current customer list (attached to the Distributor Agreement) in order to focus new accounts for Newlook's products rather than have QC service or convert Newlook's current customers. (Doc. 5, Motion to Transfer, ¶ 12)  Section 1.2, of the Distributor Agreement, memorialized this agreement, which provides that "[f]or a period of twelve (12) months from the date of the Agreement [QC] will not sell Products to those customers on Newlook's list."  During the twelve months, the parties could agree "in good-faith, and based on the best interests of each customer and on a sales performance timeline, which both parties will also mutually agree" to transition some of Newlook's customers to QC.  However, Newlook "will not be obligated" to transition any customers. (Doc. 5, Motion to Transfer, ¶ 13)

Defendant contends that in or around March 2007, QC nonetheless sought to transition some of Newlook's customers to QC.  Defendant contends that QC had poor sales, but it considered

the transition of customers prior to the twelve (12) month
anniversary of the Distributor Agreement.  Newlook began
negotiations with QC for a memorandum of understanding (MOU) to
address potential transfer of Newlook customer which resulted in
a written MOU on March 27, 2007.  (Doc. 5, Motion to Transfer, ¶
18)  In April 2007, Defendant contends that Mr. Nichols, QC's
Vice President and Chief Operating Officer, requested a meeting
with Newlook in Salt Lake City, Utah to discuss the MOU which
resulted in a May 14, 2007 meeting in Utah. (Doc. 5, Motion to
Transfer, ¶ 19)  Mr. Langston, Mr. Webb and Dave Rice, Newlook's
General Manager, attended the Salt Lake City, Utah meeting. (Doc.
5, Motion to Transfer, ¶ 19)

       Defendant alleges that QC responded to Newlook's Notice of
Breach Letter by writing its own letter on October 16, 2007
claiming that Newlook was in breach of the Distributor Agreement
and threatened to bring suit against Newlook in Utah federal
court. (Doc. 5, Motion to Transfer, p. 3:19-21, Exhibit C, QC
Notice of Breach Letter)

C.     Anticipatory Filing: California Action

       On October 23, 2007, QC filed suit not in Utah federal court
as stated in its letter but in California Superior Court, County
of Madera alleging breach of contract, intentional interference
with business and contractual relationships, and fraud and deceit
because Newlook (1) refused to fill pending and new orders; (2)
unreasonably delayed filling orders for QC customers, including
to but not limited to, Border Products, Hub Construction
Specialities and Spec West; (3) failed to properly match colors;
(4) failed to accurately fill and bill orders by QC customers;

5

1 and (5) contracted or attempted to contract with new distributors

2 in markets serviced by QC, including through a website

3 ("California Action"). (Doc. 1, Complaint)

4 D.    Utah Action

5        On November 13, 2007, after the 30-day cure period had

6 passed, pursuant to section 6.2 of the Distributor Agreement, for

7 breaches of the Distributor Agreement, Newlook filed its

8 complaint against QC in the United States District Court for the

9 Central District of Utah (No. 02:07-cv-876) ("Utah Action")

10 alleging that QC has breached the Distributor Agreement. (Doc. 5,

11 Motion to Transfer, and Doc, 15, Reply, Exhibit A, Utah Action

12 Complaint)

13        Section 6.2(c) of the Distributor Agreement states:

14              This Agreement may be terminated as follows:

15              (c) By either party if one party is in breach of this
                agreement for more than (30) thirty days after
16              receiving (30) thirty days written notice of said
                breach from the other party.  In this case, non-
17              breaching party must give 30 (thirty) days written
                notice of breach to the other party.  Then if said
18              party in receipt of written notice does not cure said
                breaches within 30 (thirty) days of receipt of written
19              notice, this agree[ment] shall be terminated.

20 (Doc. 1, Complaint, Exhibit A, Distributor Agreement, § 6.2(c))

21        In the Utah Action, Plaintiff QC filed a counterclaim on

22 December 20, 2007, alleging the same causes of action on the

23 Distributor Agreement, breach of contract, intentional

24 interference with existing and future business relationships and

25 economic advantage, and fraud and deceit, and alleging the same

26 facts as in the California Action. (Doc. 15, Reply, Exhibit A,

27 QC's Counter-claim and Exhibit B, Docket Report, No. 7)

28        Two initial scheduling conferences were held on February 21,

2008 and March 7, 2008 in the Utah Action and the Utah federal court has entered a scheduling order commencing discovery. (Doc. 15, Reply, Exhibit B, Docket Report)

E.   **Location of Meetings; Location of Witnesses**

Prior to entering into the Distributor Agreement, Defendant contends that no one from Newlook had ever traveled to California to meet with QC regarding the Distributor Agreement.  (Doc. 5, Motion to Transfer, ¶ 7)  Defendant contends that upon information and belief, Mr. Sullivan of QC lives and works in Denver, Colorado.  Mr. Iannone, of QC, at the time of negotiations, lived and worked out of Ogden, Utah.

Mr. Webb, of Newlook, lived and worked out of Utah.[1]   Mr. Langston, of  Newlook, lived and worked in Utah. (Doc. 5, Motion to Transfer, ¶¶ 4, 5)

Both parties are in agreement that the Distributor Agreement was executed in Las Vegas, Nevada.

Plaintiff alleges the following are key witnesses who reside in California who will testify:

> 1) Matthew Stegemiller, QC's President and Chairman of Bomanite Corporation, living and working in California – Mr. Stegemiller will be testifying to all aspects of the relationship between QC and Newlook, including performance under the Distributor Agreement as well as negotiations and discussions with Newlook management.
>
> 2) Bill Nichols, Vice President of Operations of QC, living and working in California.  Mr. Nichols was the primary negotiator of the Newlook Agreement.
>
> 3) Marsy Nikkel, Vice President of Finance of QC, living and working in California.

---

[1] Mr. Webb currently attends school in Arizona, but has maintained his Utah residence and travels to Utah for Newlook board meetings.

1       **4) Glen Roman, living and working in California, provides training for Newlook customers, including customers obtained by QC.**

2

3       **5) Representatives of Spec-West, Newlook's largest customer, with locations in Sacramento and Loomis, California.**

4

5       **6) Representatives of the following Newlook Customers that are located in California: a) Hub Construction Specialities, Inc. (Plaintiff states no locations in Utah, Plaintiff lists various locations throughout California); b) Permanent Concrete Products (Santa Maria, California); c) Cemex (El Dorado Hills, California); d) Concrete, Inc. (Plaintiff states no locations in Utah and Plaintiff states locations within Eastern District of California); e) Granite Rock (Plaintiff states no locations in Utah, Plaintiff lists various locations throughout California); f) Muller Construction Supply (Plaintiff states no locations in Utah, Plaintiff lists various locations throughout California); g) United Rentals (Plaintiff states California locations, but does not list exact locations); and h) White Cap Construction Products (San Jose, California).**

6

7

8

9

10

11

12

13

14    Defendant Newlook alleges the following are key witnesses

15 (former and current employees) who reside in Utah that will

16 testify:

17       **The following will provide testimony about the negotiations and Newlooks performance under the Agreement:**

18

19       **1) Reid Langston (President and CEO); and**

20       **2) Jacob Webb (former Vice President).**

21       **The following will testify about Newlook's performance under the Agreement:**

22

23       **3) Dave Rice (former General Manager);**

24       **4) Debra Sudweeks (employee from temporary employment agency that currently serves as Newlook's office manager and bookkeeper); and**

25

26       **5) Jaime Villagomez (Vice President and Chief Operating Officer).**

27 **F. Choice of Law and Jurisdiction**

28    The Distributor Agreement states the following in section

**8**

8.2, titled : "Controlling Law; Consent to Jurisdiction":

> This Agreement is entered into and will be deemed for all purposes to have been made in Salt Lake City, Utah, U.S.A., and shall be governed by and construed in accordance with the laws of the State of Utah.

(Doc. 1, Complaint, Exhibit A, Distributor Agreement, § 8.2)

### 4.    JURISDICTION

Plaintiff is a corporation organized and existing under the laws of the State of California, doing business throughout the United States as QC Construction Products. (Doc. 1, Complaint, ¶ ¶ 1, 15)  Defendant is a corporation with its principal place of business in Utah. (Doc. 1, Complaint, ¶¶ 1, 4)  The Complaint seeks damages in excess of $75,000, exclusive of interest and costs.   Jurisdiction exists under 28 U.S.C. § 1332.

### 5.    DISCUSSION

A.    Section 1406(a) and 12(b)(3) Dismissal.

Section §1406 provides:

> (a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

> (b) Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue.

28 U.S.C. § 1406.

When venue is improper and a motion to transfer venue is made, the district court must transfer the action pursuant to 28 U.S.C. §1406(a).  A transfer sought under this provision "raises the question whether this forum is the appropriate, as distinguished from a permissible, forum for disposing of the issues between the parties." *Deering Milliken Research Corp. v.*

9

*Textured Fibres, Inc.*, 310 F.Supp. 491, 503 (D.S.C. 1970).

Transfer pursuant to § 1406(a) is not proper unless the transferor court has jurisdiction over the subject matter of the action.  Personal jurisdiction over the defendants is not required. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962) (§ 1406 is broad enough to authorize transfer whether the court in which action was filed had personal jurisdiction over the defendants or not).

If the original forum was a proper venue, §1406(a) cannot apply and 28 U.S.C. §1404(a) is the relevant statute to address venue.  Section 1404(a) grants the court the authority to transfer any case to a more convenient forum if transfer is in the interest of justice.

Defendant argues that the Distribution Agreement contains a forum selection clause in section 8.2 and therefore the California Action should be dismissed under Federal Rule 12(b)(3) and 28 U.S.C. § 1406 or transferred to Utah federal court because the Eastern District of California is the wrong forum in which to adjudicate this dispute.

Rule 12(b)(3) of the Federal Rules of Civil Procedure governs a motion to dismiss premised on the enforcement of a forum selection clause. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996); *see also Offshore Sportswear, Inc. v. Vuarnet Int'l, B.V.*, 114 F.3d 848, 851 (9th Cir.1997) (holding that "[w]e treat dismissal based on a forum selection clause like a dismissal for improper venue under Rule 12(b)(3)").  In deciding a motion to dismiss under Rule 12(c) based on a forum selection clause, the pleadings are not accepted as true, and the

court can consider facts outside of the pleadings. *Argueta*, 87
F.3d at 324; *see generally Mitsubishi Motors Corp. v. Soler
Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985).

Section 8.2 contains the following title and clause:

> 8.2  Controlling Law; Consent to Jurisdiction.  This
> Agreement is entered into and will be deemed, for all
> purposes to have been made in Salt Lake City, Utah,
> U.S.A., and shall be governed by and construed in
> accordance with the laws of the State of Utah.

Defendant cites to two cases to support its interpretation
that the clause is in effect a forum selection clause chosen by
the parties to the Distributor Agreement.  However, the two
cases cited contain clauses that clearly choose venue.  The
first case is from the Fourth Circuit, *Sterling Forest Assoc.,
Ltd. v. Barnett-Range Corp.*, 840 F.2d 249 (4th Cir. 1988),
*overruled on other grounds in Lauro Lines v. Chasser,* 490 U.S.
495 (1989).  *Sterling* interpreted the relevant clause as
mandating for venue: "This Agreement is entered into and will be
deemed for all purposes to have been made in Salt Lake City,
Utah, U.S.A. ... shall be construed and enforced in accordance
with the laws of the State of California and the parties agree
that in any dispute jurisdiction and *venue shall be in
California*." *Id.* at 250 (emphasis added).  Likewise in the
second case cited by Defendant, *Central Coal Co. v. Philbro
Energy, Inc.*, 685 F.Supp. 595 (W.D. Va. 1988), the court held
the following provision mandatory for venue: "This contract
shall be governed by and construed in accordance with the laws
of New York ... Each party *expressly submits to the jurisdiction
of the state of New York*." *Id.* at 596 (emphasis added).
Defendant also cites as evidence of venue choice among the

parties, the fact that QC's counsel mentioned in its response letter on October 16, 2007, to Defendant's Notice of Breach Letter, that if there was not significant progress toward a resolution of the dispute, Plaintiff would file a complaint "in the U.S. District Court in the District of Utah..." (Doc. 5, Motion to Transfer, Exhibit C, p.4)

The relevant clause in the Distribution Agreement, Section 8.2, does not expressly select the Utah District Court as the venue of choice. The provision was drafted by sophisticated lawyers who knew how to word a forum selection clause. The parties' could have chosen venue by naming the state where jurisdiction was located or identified the court of the forum state as the venue selected. Plaintiff argues that Section 8.2 of the Distributor Agreement is not proof that the parties chose Utah as its exclusive venue. While the heading of the section may indicate the parties intended to choose jurisdiction in Utah, the language of the section does not specify that any suit must be brought in the State of Utah.

Defendant's motion to dismiss or transfer pursuant to 28 U.S.C. § 1406 is DENIED.

B.   Section 1404(a) Transfer.

Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404.

The decision whether to transfer venue lies in the discretion of the district court. *Jones v. GNC Franchising,*

*Inc.*, 211 F.3d 495, 498 (9th Cir. 2000); *Commodity Futures Trading Commission v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979); *see also Creative Technology, Ltd. v. Aztech System Pte.*, 61 F.3d 696, 699 (9th Cir. 1995) (forum non conveniens determination committed to sound discretion of the trial court). "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

In ruling on a motion to transfer, a district court must consider each of the factors enumerated in § 1404(a): convenience of the parties, convenience of the witnesses, and the interests of justice. *Kasey v. Molybdenum Corp.*, 408 F.2d 16, 20 (9th Cir. 1969). "Under § 1404(a), the district court has discretion 'to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (citation omitted). "A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case." *Id.* The court may consider:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id.* at 498-499.

1    "As part of this inquiry, the court should consider private

2    and public interest factors affecting the convenience of the

3    forum." *Decker Coal Co.*, 805 F.2d at 843.   Private factors

4    include the "relative ease of access to sources of proof;

5    availability of compulsory process for attendance of unwilling,

6    and the cost of obtaining attendance of willing, witnesses;

7    possibility of view of premises, if view would be appropriate to

8    the action; and all other practical problems that make trial of

9    a case easy, expeditious and inexpensive." *Gulf Oil Corp. v.*

10   *Gilbert*, 330 U.S. 501, 508 (1947).   Public factors include "the

11   administrative difficulties flowing from court congestion; the

12   'local interest in having localized controversies decided at

13   home'; the interest in having the trial of a diversity case in a

14   forum that is at home with the law that must govern the action;

15   the avoidance of unnecessary problems in conflict of laws, or in

16   the application of foreign law; and the unfairness of burdening

17   citizens in an unrelated forum with jury duty." *Piper Aircraft*,

18   454 U.S. 235, 241 n. 6 (1981) (*quoting Gulf Oil Corp.*, 330 U.S.

19   at 509).

20       In cases where § 1404(a) transfer is based on "the

21   convenience of witnesses," courts usually require the party

22   seeking transfer to designate: (1) the key witnesses to be

23   called, (2) where these witnesses are located, (3) a general

24   statement of what their testimony will cover, and (4) why such

25   testimony is relevant or necessary. *A. J. Industries, Inc. v.*

26   *U.S. Dist. Ct.,* 503 F.2d 384, 389 (9th Cir. 1974); *Grubs v.*

27   *Consolidated Freightways, Inc.*, 189 F.Supp. 404, 409 (D.C. Mont.

28   1960) ("Certainly the nature of the testimony to be offered by

**14**

the witnesses and whether they are 'key witnesses' are factors to be considered by the court in ruling on a motion to transfer."); *Alcoa Steamship Company, Inc. v. M/V Nordic Regent*, 654 F.2d 165, 167 (2nd Cir. 1978) ("Sufficient information must be included in its affidavits to establish that the named witnesses are key witnesses who need to be called and that their testimony is material.")

When the action is sought to be transferred in "the interest of justice," the governing factors include: (1) avoidance of multiple actions, (2) sending the action to the state most familiar with governing law, and (3) the feasibility of consolidation with other actions. *Id.*

The Ninth Circuit has noted justification exists for departing from the first-filed rule when a party files an anticipatory filing after the opposing party gives notice of its intent to sue. "The circumstances under which an exception to the first-to-file rule typically will be made include bad faith ... anticipatory suit, and forum shopping." *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th Cir. 1991) (citations omitted); *see also Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 n. 3 (5th Cir. 1983) ("Anticipatory suits are disfavored because they are an aspect of forum-shopping"); *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2nd Cir. 1978), ("[w]hen the declaratory judgment action has been triggered by a notice letter, this equitable consideration may be a factor in the decision to allow the later filed action to proceed to judgment in the plaintiffs' chosen forum"), *overruled on other grounds by Pirone v. MacMillan,*

15

*Inc.*, 894 F.2d 579 (2nd Cir. 1990).

Transfer will not be allowed merely to shift the inconvenience from one party to another. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).   The party seeking transfer bears the burden of showing the balance of convenience clearly favors transfer. *Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

*Convenience of Witnesses and Availability of Process to Compel Witnesses*.

Neither party presents evidence of unwilling witnesses that would require the Utah District Court or the Eastern District of California Court to compel their attendance or be unable to compel them to testify.   " ... A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii). [residing more than 100 miles away]" Fed. R. Civ. P. 45(e).[2]   Both parties cite to their companies' executive and employees as witnesses.   Newlook identifies as witnesses employees located primarily in Utah.   QC identifies employees based in California.   Party witnesses presumably will be able to

---

[2] **Fed. R. Civ. P. 45(3)(A)(ii) provides:**

**"(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that: ... (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person--except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;"**

testify and less weight is given in determining convenience of party witnesses.  The fact that both parties have witnesses in each of their respective states provides no weight in either's favor in terms of convenience of parties' witnesses.

QC provides a list of non-party witnesses, mostly California-based or California-related companies that must be deposed and from which evidence will be gathered, in particular Spec West, Hub Construction Specialties and Border Products (in its quest to prove that Newlook breached the Distributor Agreement).  QC claims these companies' employees are key witnesses as the primary dispute between the parties centers around QC's ability to service these customers.  These are non-party witnesses and their the presence at trial will be more convenient in the Eastern District of California. *See Gundle v. Fireman's Fund Insurance Co.*, 844 F.Supp. 1163, 1166 (S.D. Tex. 1994) ("It is the convenience of non-party witnesses, rather than that of employee witnesses, however, that is the more important factor and is accorded greater weight.")  QC does not state that any of these witnesses are unwilling or unavailable to testify should the action proceed to trial in Utah federal court, however this factor weighs in favor of maintaining the action in the Eastern District of California since the majority of witnesses are within the State of California.

*Locus of Operative Facts, Means of Parties, and Location of Documents and Source of Proof*

The location of the relevant documents and sources of proof weigh neither in favor of, nor against transfer.  Although the negotiations primarily took place in each party's respective

17

home states, coupled with several meetings in Utah and a signing of the Distributor Agreement in Nevada, this was an agreement that was negotiated in the modern-age of technology, through telephone calls and e-mails.  This factor however weighs in favor of Utah due to the fact that the few meetings that took place in person between the parties, were primarily in Utah and none occurred in California.

The relevant documents and any sources of proof are located in both California and Utah.  And there is no indication that prohibitory costs in exchanging relevant documents favors one party's forum over the other.

As for the means of the parties, there is no indication by either party, that they are financially incapable of litigating this matter in either forum; although Newlook states that it is an emerging company that would face financial hardship.  Both parties complain of financial hardship because their executives, involved in the negotiations of the Distribution Agreement, will be required to be away from the day-to-day operations during a trial if one proceeds in another state, but neither party provides specific information on the details of the extent of any financial hardship. (Doc. 6, Langston Decl., ¶ 32 and Doc. 8, Stegemiller Decl., ¶ 3)  This is a normal incident to litigation and usually weighs in favor of neither party.

However, when a disparity exists between the means of the party, the court may consider such means in determining where the suit should proceed. *See Pennwalt Corp. v. Purex Industries, Inc.*, 659 F.Supp. 287, 290 (D. Del. 1986) (small company in process of liquidation with only 16 employees); *800-Flowers,*

*Inc. v. Intercontinental Florist, Inc.,* 860 F.Supp. 128, 135
(S.D.N.Y. 1994) (ICF had been in business less than a year with
a single place of business, while 800-Flowers had offices
nationwide, with far greater capital).  Newlook's assertion that
it is an emerging company favors slightly favors the Utah venue.
*Forum's Familiarity with the Governing Law*

        The Distributor Agreement provides for the application of
Utah law, which weighs in favor a Utah forum, however, only
slightly in favor as this dispute is a simple contract law
action and not a complicated area of Utah law. *See Laumann Mfg.
v. Castings USA, Inc.,* 913 F.Supp. 712, 722 (E.D.N.Y. 1996)
("According to the Supreme Court of the United States in *Van
Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945
(1964), '[t]here is an appropriateness ... in having the trial
of a diversity case in a forum that is at home with the state
law that must govern the case, rather than having a court in
some other forum untangle problems in conflict of laws, and in
law foreign to itself.'[citation]")  Nuances in the law will be
understood more readily by the Utah federal district court.
Here, the Utah court is more familiar with the relevant law.
*Choice of Forum*

        Defendant contends the Distributor Agreement indicates the
choice of forum is Utah.  Plaintiff disagrees.  There is no
clear indication in the contract language that the parties
intended to have Utah serve as the forum for dispute resolution.
Section 8.2 of the Arbitration Agreement, titled "Controlling
Law; Consent to Jurisdiction" indicates that it may have
intended to provide for venue but the language of the provision

fails to specify the parties' choice of "venue" or "jurisdiction."  The parties knew how to write a contract, it includes a choice of law provision, but they failed to include a forum selection clause.  This factor is neutral.

*Interests of Justice*

The remaining factors, interests of justice, trial efficiency and judicial congestion and economy, weigh in favor of transferring the California Action to Utah District Court. QC filed this suit shortly after receipt of Newlook's October 11, 2007 Notice of Breach Letter.  Newlook's Notice of Breach Letter was sent pursuant to Section 6.2(c) of the Distribution Agreement, providing for a 30-day cure period before one party terminates the agreement.  QC, after receipt of October 11, 2007 Notice of Breach Letter, filed the California Action on October 23, 2007.  Newlook honored the 30-day cure period and filed its Utah Action on November 13, 2007.  The closeness in timing suggests that QC filed its California Action in pre-emptive anticipation of the Utah Action, possibly forum-shopping.  The first-filed rule generally should not be lightly disregarded, but here, QC filed the California Action only after Newlook provided QC with the opportunity to cure any alleged deficiencies and its notice of intent to sue QC after the 30-day cure period had expired in accordance with the contract terms. Thus QC's anticipatory filing decision weighs in favor of transfer.

In addition, QC filed a counterclaim on December 20, 2007 in the Utah Action that is substantially similar to the California Action.  As a result, consolidation of the actions is

20

entirely feasible and is a factor to be taken into consideration in transferring venue. *A. J. Industries, Inc. v. U.S. Dist. Ct.*, 503 F.2d 384, 389 (9th Cir. 1974) ("The feasibility of consolidation is a significant factor in a transfer decision.")

Consolidating the California Action and the Utah Action will promote judicial economy and allow the parties to resolve all differences in a single forum and avoid conflicting decisions by different courts.  Discovery has commenced in the Utah Action and the Utah District Court has held two scheduling conferences to date.  The parties have permitted that case to proceed and it is further developed.  By comparison, the California case has not had a scheduling conference to date and it is in its initial stages.  This motion is the first activity. QC has not disputed jurisdiction in the Utah case and filed not only an answer, but also a counter-claim mirroring its California Action.  Both courts are proceeding with essentially the same case, an inefficient use of judicial resources. Neither party argues that Utah is not a forum in which this action might have been originally brought.  QC has not moved to transfer the Utah Action, rather it has continued participating the Utah Action by filing a counter-claim seeking affirmative relief and attending two scheduling conferences.

In addition, the court congestion is arguably higher in the Eastern District of California, which has one of the highest case loads in the country.  The Utah Action will face less difficulties based on the Utah district court's lower court congestion.

Transfer of venue under the law of the Ninth Circuit based

21

on forum non conveniens pursuant to section 1404(a) is "an exceptional tool to be applied sparingly." *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000). And a strong presumption exists in favor of the plaintiff's choice of forum. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). The following factors weigh against transfer of venue: convenience of non-party witnesses is questionable in Utah but likewise in the Eastern District of California for any of Newlook's out of state witnesses.

The following factors weigh in favor of transfer of venue to Utah to serve the interests of justice and convenience of parties: Plaintiff's choice of forum was obtained through anticipatory filing; the Utah Action is based on the same nucleus of facts and is more developed; Plaintiff has filed a counterclaim in the Utah Federal District making consolidation feasible and consistent with judicial economy; the Distribution Agreement was negotiated in both states but in-person meetings occurred primarily in Utah; the convenience of party witnesses is equally burdensome to both parties; the convenience of the parties in terms of financial burden weighs slightly in favor of Newlook; the Utah federal court is less congested; and the Utah court is more familiar with the applicable Utah state laws.

The California District Court has federal subject matter jurisdiction under 28 U.S.C. § 1332: The parties are citizens of different sates and more than the jurisdictional amount is in dispute. One of the parties to the contract is a California corporation. The contract was partly performed in California. There is no legal impediment to a § 1404 transfer, sufficient

22

California contacts exist to provide personal jurisdiction over Newlook, by reason of its contract with Plaintiff which Newlook knew was headquartered in California, was doing business, where it would serve as Newlook's national distributor.

It is appropriate to grant Defendant's motion to transfer pursuant to 28 U.S.C. § 1404(a).

## CONCLUSION

For all the reasons stated above,

Defendant's Motion to Transfer or Dismiss pursuant to 28 U.S.C. § 1406 and 12(b)(3), Improper Venue, is DENIED.

Defendant's Motion to Transfer pursuant to 28 U.S.C. § 1404, is GRANTED.  Defendant shall submit an order consistent with this decision, within five (5) days following service by the clerk of the court of this decision.

IT IS SO ORDERED.

Dated:    April 15, 2008                    /s/ Oliver W. Wanger
                                    UNITED STATES DISTRICT JUDGE